UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRACY L. M., | ) | NO. CV 20-2127-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security Administration, | ) ) | **AND ORDER OF REMAND** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on March 4, 2020, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on March 31, 2020. Plaintiff filed a motion for summary judgment on September 3, 2020.

1  Defendant filed a motion for summary judgment on November 4, 2020.
2  The Court has taken the motions under submission without oral
3  argument. See L.R. 7-15; "Order," filed March 9, 2020.

**BACKGROUND**

Plaintiff initially asserted disability since January 5, 2013, based on alleged mental impairments (depression, hearing voices, and memory issues associated with treatment for stage four ovarian cancer) and alleged left hip arthritis (Administrative Record ("A.R.") 240-52, 273, 287, 309, 318).[1] An internal medicine consultative examiner and the state agency physicians opined in 2016 that Plaintiff was capable of medium work with some postural limitations (A.R. 81, 96-112, 411-16).

The focus of Plaintiff's arguments for disability appear to have changed after May of 2017, when Plaintiff suffered a fall. Plaintiff alleges that this fall significantly worsened her physical condition. See A.R. 50-51, 446-47, 612, 623-27; see also Plaintiff's Motion, pp. 5-12 (asserting that the medical record prior to the May, 2017 fall concerns Plaintiff's ovarian cancer and resultant brain fog, and that Plaintiff's shoulder, back and hip condition "did not materialize to a debilitating factor until after the May, 2017 slip and fall").
///
///

---

[1] Plaintiff reported to her treating providers that she stopped working due to ovarian cancer and depression (A.R. 408).

The only medical opinion post-dating May of 2017 is from treating Physician's Assistant ("P.A.") Jennifer Chun, who answered a "Physical Residual Functional Capacity Questionnaire," dated September 26, 2018 (A.R. 1154-57). Therein, P.A. Chun opined that Plaintiff has lumbar disc herniation, a right shoulder "SLAP tear" for which Plaintiff had undergone surgery, and left hip osteoarthritis (A.R. 1154-55). According to P.A. Chu, these conditions cause constant pain and likely would cause Plaintiff to miss more than four days of work per month (A.R. 1154-57). P.A. Chun further opined that Plaintiff was capable of only low stress work, limited to: (1) lifting less than 10 pounds rarely; (2) sitting no more than 30 minutes at a time; (3) standing no more than 30 minutes at a time; (4) sitting and standing/walking for a total of less than two hours each in an eight-hour day with breaks every hour; and (5) rarely twisting, stooping/bending, crouching, and never climbing ladders or stairs. Id.

The Administrative Law Judge ("ALJ") found Plaintiff has severe impairments: lumbar radiculitis, post right shoulder surgery, left hip osteoarthritis, chronic obstructive pulmonary disease and depression (A.R. 15-18). However, the ALJ also found: (1) Plaintiff retains the residual functional capacity to perform a range of light work; and (2) there exist significant numbers of jobs Plaintiff can perform (A.R. 18-25 (adopting vocational expert testimony at A.R. 59-

///
///
///
///

62)).[2]  The ALJ accorded "little weight" to the pre-May, 2017 opinions of the consultative examiner and the state agency physicians as "not consistent with the evidence of record" (A.R. 22).  The ALJ also accorded "little weight" to P.A. Chun's opinions as "not supported by the evidence of record" (A.R. 22-23).[3]  The Appeals Council denied review (A.R. 1-3).

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).  A full range of light work requires six hour of standing or walking in an eight-hour day.  See Social Security Ruling 83-10.

[3] The ALJ stated:

Specifically, a lumbar spine MRI showed no significant spinal canal or foraminal narrowing at L2-L3.  There was only a mildly dislocated disc at L3-L4 with a three mm-right foraminal protrusion and a [four] mm foraminal protrusion on the left and mild facet joint hypertrophy and mild bilateral foraminal narrowing.  At L4-L5, there was disc dessication and a disc bulge, but only moderate spinal canal narrowing and mild bilateral foraminal narrowing [A.R. 1115].  A left hip MRI[] revealed severe degenerative changes and the right hip was noted to have mild to moderate degenerative changes [A.R. 1159].  Despite these abnormal findings, the claimant has not required surgical intervention and her pain symptoms are medically managed.

(A.R. 22-23; see also A.R. 21 (discussing evidence post-dating the May, 2017 fall in more detail and reaching conclusion that light work with postural/reaching limitations is assertedly supported by the objective clinical findings)).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

///
///
///
///

**DISCUSSION**

Plaintiff asserts that, in assessing Plaintiff's post-May, 2017 residual functional capacity, the ALJ erred by rejecting P.A. Chun's opinions in favor of the ALJ's own interpretation of the medical record. See Plaintiff's Motion, pp. 13-17.[4] The Court agrees.

**I.  Summary of the Medical Record for the Period After Plaintiff's May, 2017 Fall**

Plaintiff presented for an orthopedic surgery consultation with Dr. Vlad Gendelman in August of 2017, complaining of moderate to severe pain in the neck, right shoulder, lower back and left hip following her May, 2017 fall (A.R. 446-47). Plaintiff then reportedly was taking Norco up to three times a day. Id. Clinical examination immediately after Plaintiff's fall reportedly had revealed no fractures or evidence of acute injury (A.R. 446; see also A.R. 612-44 (emergency room records)). Plaintiff said she had undergone chiropractic treatment and physical therapy, and she sought an interpretation of a July, 2017 lumbar spine MRI (A.R. 447, 451-52).

///
///

---

[4] Plaintiff does not appear to challenge the ALJ's decision as to the time period from the alleged onset date through May 28, 2017. See Plaintiff's Motion, pp. 13-14 (arguing only that the ALJ did not properly evaluate the period after May of 2017). Accordingly, the Court only addresses the ALJ's decision for the time period from May 28, 2017 through the date of the decision (January 25, 2019).

On examination by Dr. Gendelman, Plaintiff reportedly had tenderness to palpation, as well as pain on range of motion in the lumbar spine and in the hips (A.R. 448-51). The July, 2017 lumbar spine MRI showed, <u>inter alia</u>, a 5-mm left foraminal protrusion at L2-L3 moderately narrowing the left foraminal zone with mild facet joint hypertrophy, mild dessication at L3-L4 with a 3-mm right foraminal protrusion and a 4-mm left paracentral through left foraminal protrusion and mild facet joint hypertrophy, mild bilateral foraminal narrowing, dessication at L4-L5 with a 3-mm asymmetric disc bulge and moderate facet joint hypertrophy with small right-sided facet joint effusion, moderate spinal canal narrowing and mild bilateral foraminal narrowing, and a 2-to-3-mm broad-based posterior protrusion at L5-S1 with mild facet joint hypertrophy (A.R. 451-52; <u>see also</u> A.R. 732-33 (MRI report)). A June, 2017 cervical spine x-ray reportedly showed reversal of the normal cervical lordosis and grade I anterolisthesis of C3 on C4 (A.R. 452).

Dr. Gendelman diagnosed cervical and lumbar musculoligamentous injury, cervical and lumbar spine radiculopathy, multiple disc bulges in the lumbar spine, right shoulder rotator cuff syndrome, right shoulder acromioclavicular joint arthrosis, right shoulder impingement syndrome, right shoulder biceps tendonitis, a resolved wrist sprain/strain, and "left greater trochanteric bursitis," causally related to Plaintiff's May, 2017 fall (A.R. 452, 454). Dr. Gendelman requested a right shoulder MRI and prescribed Mobic, as well as a home exercise and icing program (A.R. 453). Dr. Gendelman indicated that, if Plaintiff continued to have cervical spine pain, she should have a cervical MRI study, and, if her lumbar spine

1    symptoms worsened, perhaps epidural steroid injections (A.R. 453).

3    Plaintiff saw Dr. Gendelman again in October of 2017,
4    complaining of worsening pain (A.R. 455). Examination revealed
5    tenderness and pain on palpation and positive Neer's and Hawkins'
6    tests (A.R. 456). Plaintiff's September, 2017 right shoulder MRI
7    reportedly showed, <u>inter alia</u>, diffuse rotator cuff tendinosis with
8    partial tearing of the supraspinatus tendon, focal concavity at the
9    posterior-superior aspect of the humeral head, a "SLAP tear" with
10   degeneration of the posterior superior through posterior-inferior
11   labra, a suspected tear of the inferior glenohumeral ligamentous-
12   labral complex anteriorally-inferiorly, moderate gelohumeral joint
13   effusion, and 1.7-mm chondral denudation of the superomedial humeral
14   head (A.R. 456-57; <u>see also</u> A.R. 891-93 (MRI report)). Dr. Gendelman
15   diagnosed a right shoulder partial rotator cuff tear and recommended
16   a right shoulder steroid injection, three lumbar epidural steroid
17   injections, a cervical spine MRI, and a home exercise and icing
18   program (A.R. 457-58).

20   From October of 2017 through at least June of 2018, Plaintiff
21   was treated monthly by Dr. Arthur Kreitenberg with the Center for
22   Orthopedic & Sports Excellence (A.R. 691-733). Plaintiff initially
23   complained of moderate to severe right shoulder pain and low back
24   pain, worsened by movement and prolonged sitting (A.R. 691-93). Dr.
25   Kreitenberg examined Plaintiff, reviewed a lumbar spine MRI, and
26   recommended lumbar epidural steroid injections and a right shoulder
27   cortisone injection, as well as right shoulder arthroscopy (A.R. 698-
28   99, 723-29). Dr. Kreitenberg also prescribed Norco (A.R. 699-700).

When Plaintiff returned in November of 2017, she reported that her shoulder pain was worsening and her lumbar spine pain and hip pain were continuing (A.R. 701-02). She was prescribed a lumbar epidural steroid injection and a refill of Norco (A.R. 701-02). Plaintiff returned in December of 2017, reporting that the lumbar epidural steroid injection had helped somewhat with her back pain and hip pain, but she claimed that her shoulder was still very painful (A.R. 703-04; see also A.R. 1148-52 (operative report for injection)). Dr. Kreitenberg refilled the Norco and recommended another lumbar epidural steroid injection, as well as a hip injection and shoulder arthroscopy (A.R. 704).

In January of 2018, Plaintiff reported constant shoulder pain diagnosed as a "SLAP tear," and she underwent right shoulder surgery by Dr. Kreitenberg later that month, as well as a second lumbar epidural steroid injection (A.R. 705-09, 721-22; see also A.R. 546-48 (surgery report)). She reported shoulder improvement at ensuing visits in February, March, April and June of 2018 (A.R. 711-20).

Throughout this time period, i.e., from June of 2017 through at least August of 2018, Plaintiff also was being treated monthly by P.A. Chun for, inter alia, a history of ovarian cancer, left wrist ganglion cyst,[5] depression, lumbar disc herniation with radiculopathy, low back pain, hip pain, right shoulder pain, and

---

[5] Plaintiff reportedly injured her left wrist in December of 2016 (A.R. 594). She reinjured her left wrist from another fall in June of 2018, which led to the development of a ganglion cyst (A.R. 1104).

pulmonary emphysema (A.R. 43, 825-95). P.A. Chun prescribed Gabapentin, Norco and Tramadol for pain (A.R. 827, 842, 848, 852, 855, 858, 860, 867).[6] P.A. Chun reviewed the July, 2017 lumbar spine MRI and September, 2017 right shoulder MRI reports, and a September, 2018 left hip MRI report (A.R. 887-93; see also A.R. 1159 (left hip MRI report)). The left hip MRI revealed severe left hip degenerative changes and findings consistent with mild to moderate right hip joint degenerative changes (A.R. 1159).

As detailed above, the record contains opinions from P.A. Chun, dated September 26, 2018, that Plaintiff is far more limited than the residual functional capacity assessed by the ALJ (A.R. 1154-57).

**II.  Substantial Evidence Does Not Support the ALJ's Assessment of Plaintiff's Residual Functional Capacity.**

For the time period after May of 2017, the record contains no medical opinion by any physician concerning Plaintiff's functional capacity. Only P.A. Chun offered any functional capacity opinion after May of 2017 (A.R. 22-23). No physician critiqued P.A. Chun's opinions. Unaided by any medical opinion evidence, the ALJ purported to determine that: (1) P.A. Chun's opinions are "not supported by the evidence of the record"; and (2) the objective clinical findings in the record translate into a light work residual functional capacity

---

[6]  Plaintiff also underwent pain management treatment with Harbor UCLA Pain Management from April of 2018 through August of 2018, where she was prescribed Gabapentin, Norco and lumbar epidural steroid injections (A.R. 1111-46).

(A.R. 21).

To reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. Valentine v. Commissioner, 574 F.3d 685, 692 (9th Cir. 2009). Under regulations applicable to claims filed before March 27, 2017,[7]

> only licensed physicians and certain other qualified specialists[] are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a). Physician's assistants are defined as "other sources," § 404.1513(d), and are not entitled to the same deference, see § 404.1527; SSR 06-03p. The ALJ may discount testimony from these "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'" See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.2001)).

Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); see also Austin v. Saul, 818 Fed. App'x 725, 728 (9th Cir. 2020) (discussing pre-2017 standard applicable to other source opinions).

While a conflict with treatment notes or the treatment record may provide a germane reason for rejecting a treating provider's

---

[7] Unless otherwise noted, the regulations cited in this section are those applicable to claims filed before March 27, 2017.

11

opinion, see Molina, 674 F.3d at 1112, substantial evidence must support such reasoning. See Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (discussing standard for reviewing treating providers' opinions and finding that substantial evidence did not support the ALJ's conclusion that the opinions were inconsistent with treatment notes). Here, substantial evidence fails to support the determination that P.A. Chun's opinions are "not supported by the evidence of the record."

In some instances not present here, the failure of a record to support a treatment provider's opinion is readily apparent and does not require any medical knowledge to discern or confirm. As an obvious example, if a treatment provider opined that a patient could not walk more than 20 minutes, but the provider's own examination findings reported that the patient had walked without discomfort for 40 minutes during a treadmill test, then a lay person properly could discern a lack of record support. In other instances, a lack of record support for a treatment provider's opinion is not readily apparent and will require medical knowledge to discern or confirm. A review of the relevant medical record in this case persuades the Court that any alleged failure of the record to support P.A. Chun's opinions is not readily apparent.

If a person has multi-level lumbar disc bulges with mild to moderate foraminal narrowing and facet joint hypertrophy with radiculopathy requiring repeated epidural steroid injections and treatment with narcotic pain relievers, right shoulder injury requiring surgery, and severe left hip degenerative changes and mild

12

to moderate right hip joint degenerative changes, would that person necessarily be able to lift up to 20 pounds or stand and walk up to six hours a day, as the ALJ found? To answer this question competently (and to answer competently other, similar questions inherent in the ALJ's evaluation of P.A. Chun's opinions and the ALJ's assessment of Plaintiff's residual functional capacity) one would need the benefit of medical knowledge regarding the kinds of impairments afflicting Plaintiff. How do these impairments typically manifest themselves in symptomatology, and what do those manifestations (or lack thereof) necessarily indicate with regard to functional capacity? On the present record, this Court is not competent to say.

Neither was the ALJ. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ who is "not qualified as a medical expert" cannot make "his [or her] own exploration and assessment as to [the] claimant's physical condition"); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); Rohan v. Chater, 98 F.3d 966, 970-71 (7th Cir. 1996) (ALJ may not rely on his or her own lay opinion regarding medical matters); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1995) (same). At a minimum, the ALJ should have consulted a medical expert. See id.; Smith v. Astrue, 2009 WL 1322864, at *4 (E.D. Ky. May 12, 2009) (where no physician had reviewed the complete records of the treating physician, the ALJ erred by rejecting the treating physician's opinion without having sought the advice of a medical
///

13

advisor);[8] see also Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) ("[T]he ALJ has a special duty to fully and fairly develop the record to assure the claimant's interests are considered. This duty exists even when the claimant is represented by counsel.").

The regulations certainly vest in the ALJ the "responsibility for assessing residual functional capacity." 20 C.F.R. § 404.1546(c). Just as certainly, however, an ALJ's assessment must be supported by substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support" the assessment. See 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. at 401. As the above authorities demonstrate (and contrary to Defendant's apparent argument), substantial evidence does not support an assessment predicated solely on an ALJ's lay interpretation of medical records where those records are of a type requiring medical expertise competently to interpret.

The Court is unable to conclude that the ALJ's errors in evaluating the medical record were harmless. See Treichler v. Commissioner, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency"); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error "is harmless where it is inconsequential to the ultimate non-

---

[8] The consultative internal medicine examiner and the state agency review physicians (on whom the ALJ did not rely in the present case) rendered their opinions in 2016, and were not asked to evaluate Plaintiff, or to review any treatment records, after Plaintiff's May, 2017 fall.

14

disability determination") (citations and quotations omitted); McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (error not harmless where "the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error").

**III. Remand is Appropriate**

Remand is the appropriate remedy under the circumstances presented. See McLeod v. Astrue, 640 F.3d at 888; see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Leon v. Berryhill, 880 F.3d 1041, 1044 (9th Cir. 2017) (reversal with a directive for the immediate calculation of benefits is a "rare and prophylactic exception to the well-established ordinary remand rule"); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Garrison v. Colvin, 759 F.3d at 1020 (court will credit-as-true medical opinion evidence only where, inter alia, "the record has been fully developed and further administrative proceedings would serve no useful purpose"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient

unanswered questions in the record"). As discussed above, there remain significant unanswered questions in the present record.

**CONCLUSION**

For all of the foregoing reasons,[9] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 6, 2020.

/S/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[9] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.